Our next case on the call of the docket is, please be seated, case number 113706, Jack V. Rodriquez, Tappalee v. Department of Financial & Professional Regulation, Appellant, Agenda Number 20. Counsel for the appellant, please proceed. Good morning, your honors, counsel. May it please the court, I'm Assistant Attorney General Carl Elitz, appearing for the Department of Financial & Professional Regulation. Your honors, for 30 years, Section 1055C of the Administrative Procedure Act has been understood by parties and courts alike to grant authority to a court that invalidates an administrative rule to shift litigation expenses from the party onto the state. This is, I understand, the first time a court has addressed the question of whether Section 1055C also allows a new court to proceed and shift litigation expenses from a prior case where a party has had an administrative rule invalidated. The language of Section 1055C provides, in very short, in very brief way, in any case in which a party has had an administrative rule invalidated for any reason, then it continues, the court shall award the party bringing the action, the reasonable expenses of the litigation, including reasonable attorney's fees. It's my suggestion to the court that this case really breaks down to whether that statute creates a cause of action, and the language is fairly straightforward, it's plain and unambiguous. The court, the party, the action, the reasonable expenses of the litigation all refer to the matter that's before the court that's handling the administrative review action or the other case involving the agency. Any other reading of that statute causes dissonance with the doctrines of res judicata, which is what the circuit court read into this statute and came to the conclusion that res judicata simply won't allow for the plaintiff's interpretation of this statute to be the one that prevails. What is a case? A case is any action, suit, or controversy. What was the case in this situation? The case in this situation was the case that was brought in the circuit court before Judge Donnersberger in 2005. Judge Donnersberger entered a final order in October of 2005 declaring that one of the administrative rules at issue was invalid, and no one did anything for 30 days. And the final judgment then became subject to not being challenged in the matter again. It was not subject to expansion or contraction. The department was unhappy with that judgment and tried to bring a 1401 claim to try to get some relief from that judgment. And in the appellate court found out the hard way that it's not possible to challenge a circuit court action after 30 days passes from the entry of a final judgment. That was the end of the case. That should have been the end of the case for purposes of an award of attorney's fees as well. The appellate court was in 2007, right? I believe that was the decision that was entered in a Rule 23 order, yes, Your Honor, in 2007. Would the claim for recovery under 1055C then have to take place in the appellate court if the appellate court was the one that ruled the rule invalid? It's my position, Your Honor, that the court that is authorized to award attorneys or shift litigation expenses is the court that declares any administrative rule invalid. Now, of course, the appeals court and this court has the ability to remand a case with directions to a trial court, and that's the logical thing to do when attorney's fees are at issue because the court that has handled the bulk of the case is the court that's best suited to decide what are reasonable attorney's fees. And so I would suggest, as happened in the DuPage case, that when the appeals court, or has happened in several of the cases actually, when an appeals court declares a rule invalid, remand is the best course of action. In DuPage, that wasn't possible because that was a direct administrative review. There was no trial court below to handle the attorney's fees issue, and so the appeals court actually was the one that awarded fees. This court didn't bless that proceeding, but DuPage did come up, and that proceeding was noted by the court in its decision. So it's my view that what happened in DuPage and what's happened in the other cases that have been decided by this court involving 1055C are all consistent with that. The court that declares the rule invalid is the court that has authority to award or shift litigation expenses. Now, my opponent argues, and successfully argued in the appellate court, that a contrary interpretation of the statute is essential because when the court, as happened in this case, declares a rule invalid in a final order, then the party who should have the benefit of this statute is stuck. But he's not stuck. Because if a court is going to invalidate an administrative rule, which typically that should happen, because the party has asked the court to invalidate the administrative rule. And so the party that has asked the court to invalidate the administrative rule should plead the claim for attorney's fees or shift of litigation expenses in the complaint. Does he have to? No. He can wait. There's an opportunity even after the court enters final judgment to ask the court to shift litigation expenses in the 30 days that follow the entry of final judgment. And it's our view that when Judge Donnersberger entered this order, this written order, the plaintiff could come back to the court that had invalidated the administrative rule in that order and asked to shift litigation expenses. But they didn't. And at that point, their right to seek fees lapses and should be found to be forfeited. Any other rule subjects the state to what I guess in the insurance industry is called a long tail. The state has no idea what's out there as far as what's been subject to shifted litigation expenses. And, in fact, my opponent takes the position that they can bring this claim forever. Isn't that what the appellate court found, that the legislature didn't intend on imposing any kind of a time on seeking attorney fees under 10-55? Yes, that's exactly what the appellate court found. So should we construe that language in any case in which the party has an administrative rule invalidated by a court for any reason? That language should be construed, but it should be construed to limit the cause of action. It should limit the claim for shifted litigation expenses to the cause of action or the case in which the claim exists. And the circuit court in this case, Judge Taylor wrote what essentially looks like a law review article about race judicata. It's something I think is well-reasoned and makes a lot of sense, but I think it's far too complicated. This case really ought to turn on this language, which in my view is very clear. The court, the party, the action, the reasonable expenses. The General Assembly is thinking about the matter that is before the court, but decides that an administrative rule is invalid. And the fact that this issue hasn't come up for 30 years I think supports our idea that this is really plain and litigants understand this. In this case, my opponents overlook this. The circuit court overlooked this. So in your argument, it's not a separate cause of action, but it is a separate claim? It is a separate claim. If it were made in the trial court before final judgment or in those 30 days that follow final judgment, it would deprive there being finality of the case. You couldn't bring a 301 appeal in such a case because there would be a new claim for a shifted litigation expense. That party could seek 304A language and come up to the appeals court that way if they could get 304A language. I don't know why a judge would grant 304A language actually unless maybe it was a complicated case. You could say it maybe, but it would deprive the final judgment of appealability and the judge would have to then consider the question. That's a very logical interpretation of the statute because it puts the claim for shifted litigation expenses in front of the judge who knows what the litigation expenses are. My opponent's argument that he can bring this claim at any time indefinitely in the future as long as he's in the same county, I guess, or in the same circuit court as the original action means that we'll have different judges looking at litigation, perhaps, as in this case, years later. So my opponent wants to file a petition with Judge Taylor, I suppose, that would be litigation expenses that go back years when Judge Taylor knows nothing about whether those fees were reasonably requested or not. Mr. Alitz, right here. I'm sorry? Excuse me. I'm sorry. No. This dispute over the rule arises out of a challenge on the authority to issue deposition subpoenas in an administrative proceeding. Is that correct? No, Your Honor. I don't believe that is correct. I think the case that you just described is what we talk about as Rodriguez II. I'm sorry, Rodriguez I. Rodriguez II. The first Rodriguez circuit court case. But I'm saying the rule, it was invalidated. Did that not deal with the issue? No. It dealt with the question of whether hearsay evidence could be presented to the agency at the administrative hearing. And Judge Donnersberger in Rodriguez II said that to the extent that the rule allowed for hearsay to be used by the agency, that was a void. What about Rodriguez I? Was there a dispute over that? Rodriguez I was a dispute about what my opponent claimed was discovery rights in the agency. He wanted the opportunity to subpoena witnesses. And it's my view that we prevailed in Rodriguez I because they appealed and lost. So there's been, as your question suggests, there's been a lot of different cases here. There's the agency action. There's Rodriguez I involving discovery at the agency level. There was Rodriguez II involving hearsay and the type of hearing they were entitled to. There was a 1401 action, which I think is another case. And then there's this Rodriguez III action, which was filed in 2008, years later. Help me out on this. In 2005, because you referenced this in your opening statement about the filing of a complaint, was the issue of the conflict between the agency rule and the civil administrative code, was that raised in that 2005? Yes, Your Honor. I believe that was. And was that in the context of administrative review action? It was not in the context of an administrative review. So it was a separate complaint. It was a deck action, actually. Okay. But was there ever in the circuit court an administrative review action arising out of these earlier, you know, when the dispute first arose? No, there's been no administrative review action in the circuit court because the department eventually gave up and settled with the other side. And so we've never had a review of a final agency action. But I guess what I'm getting to is if it had evolved and ended up in an administrative review action, where the individual files a complaint seeking review under the ARA, what would prevent the individual from raising that claim of an invalid rule and subsequently the attorney fee claim? Nothing. And I think that's exactly what the General Assembly had in mind here. They didn't really have in mind what's becoming more and more common, it seems to me, for parties to run to the circuit court and seek declaratory relief before the agency acts. What the administrative review law contemplates is that there will be sort of an orderly action at the agency level, and then after there's a final agency decision, the case will come into the circuit court. And then at the circuit court level, that's the case that the General Assembly has in mind. Then in that case, the court may say, you know what? You've invalidated an administrative rule in my mind. I think it's only fair that the state pay for your litigation expenses. This sort of multiple litigation deck actions is not what the General Assembly had in mind, but I'm stuck with the language of the statute that they've given me. It says in any case in which an administrative action is invalidated, I wasn't going to argue to the court that that can't include deck actions because that seemed to be a stretch, and the court's decided cases now under 1055C that would be against that. So we're stuck with that. And I think this litigation, in reaching this court, it's a good thing, because Section 1055C in Citizens Organizing Project was interpreted by this court. The court used very broad language about the authority to grant fees under Section 1055C and how they can extend to any sort of claim that is made during the course of the action. And I think it's possible to read it incorrectly, as my opponents seem to have, which is that anything we do with regard to anything the agency does with regard to us, we can get our shifted litigation expenses. And that logic is not consistent with what was actually said in Citizens Organizing Project, but it also isn't consistent with the statutory language. So again, it's my position that the court should come back to that statutory language, read that language in any case, in which, and ask the question, in which case did he have an administrative role invalidated? That's where he can seek his fees. And then there's a case that this court decided, Carson, where the court talks about how, if you don't bring this to the, if this hasn't been all teed up in the lower courts, it can't all be brought up in the higher courts later. You can't say to the appeals court, oh, by the way, if a court were to rule, and then later you can come back and say, I read that ruling as having invalidated an administrative role, please give me my fees. That's not consistent with the language. I think if you're going to invalidate an administrative rule in the case that you have, you need to ask the court who is deciding that case, please shift litigation expenses, and then it's appropriate. The appellate court relied primarily, maybe solely, on this Libertyville case, the condemnation case. Can you respond to that? I mean, that's basically the appellate court's entire argument is that Libertyville controls. In Libertyville, Your Honor, I believe the circuit court retained jurisdiction to consider the fees. And so when the parties came back after seeking fees, there had been that prior judgment saying those fees could be brought back. Race judicata is an equitable doctrine. And so if a court says that it's going to withhold jurisdiction, then it's inconsistent with equity to tell parties later that it's improper for them to come back. And that's how we distinguish Libertyville. And I think, as I pointed out in my opening brief, there's a case, Hurley v. Marie V. Bisturski Trust, 407 Illab 3rd, 878 at page 901, where the court talks about that as what has happened in Libertyville. And so that's how I would have distinguished Libertyville. The case that we're really going back and forth over, though, is Arndt, which was a case in which the appellate court decided that a rule was invalid but didn't do anything about it. And then years later, the plaintiff showed up in the circuit court and asked for fees and proceeded to get them. And that does seem like it's this case. But it's not this case because in Arndt, the state essentially didn't argue that there was any limitation and proceeded to the merits of the claim. And so it's my view that in Arndt, the court was revested with jurisdiction. The state did that, I think, for reasons that are pretty logical if you look at the case. When the case was remanded, we suggested to the plaintiff that they take the case to the court of claims. They spent years in the court of claims and got nothing. It was going to be a hard thing for us to argue in the circuit court after they had done what we had suggested, that they were then stuck. I am showing some empathy with my prior bosses. I think they probably looked at this and said, let's talk about how much and not whether. So that's how I would distinguish Arndt. If Arndt is not distinguished that way, I would simply say it's wrong. It's not consistent with the language of the act. Lastly, my opponent makes the argument that pursuant to Section 2701C of the Declaratory Judgment Act, the circuit court, I guess his argument is, always retains jurisdiction to go back and modify a DEC judgment. That's something that I would strongly urge the court not to buy into. First of all, under the language that I've cited to the court, the specific statute controls the general, and in this case we have a specific statute that says this court shall do this. But more generally, and Judge Taylor's decision goes into great length about this, when a party in a DEC action asks for compulsory relief, whether they get it or not, it seems to violate registered DECADA principles for them to come back later and ask for different compulsory relief. And that's a reasonable limiting principle that would respond to their argument. It's the one that I would urge the court to adopt if it gets there. I don't think you have to get there because, like I said, I think the statute takes that question away. But they did ask for coercive relief in Rodriguez II. They asked for an injunction. They didn't get it, but they asked for it. And registered DECADA bars claims similar to that. They could have brought this. So my argument is that the statute controls, but alternatively and consistent with that prior argument, registered DECADA controls because this is an argument that should have, could have been brought in the prior action in the case that was before Judge Donnersberger. We'd ask the court, if there are no further questions, to reverse the appeals court and reinstate the circuit court judgment in our favor. Thank you. Thank you. Counsel for the appellee. Thank you, Your Honors. May it please the court. My name is Stephen Roth. I am counsel for Dr. Jack Rodriguez, the appellee. And I'm asking you to affirm the decision of the appellate court. One of the basic controversies here is what is a case? And I would refer this court to the decision in Art, where the court spent two, three pages discussing what a case is and how far Section 1055C extends. And in Art, there was a prosecution brought by the department, and then there were subsequent claims. And the appellate court held that, in a manner similar to other fee-shifting statutes, that the case would apply to all claims that are brought as part of the action that stem from a common core of facts, in that particular case, the department prosecution. This court in Citizens, three years later, expressly adopted that reasoning from Art in the Citizens' opinion and, in fact, held that a person could be entitled to fees even if he did not prevail in any other aspect of the case other than the invalidation proceeding. That clearly indicates that a case can extend beyond the invalidation proceeding. Now, I would take the position, as we did in our brief, that there was one case and there were five claims. There were actually a few additional claims, but they were not mentioned because they were not pertinent here. And I would say that, in this situation, I would analogize a case to a war and a claim to a battle. And, in this particular case, the department declared war on Dr. Rodriguez's license, and then there were a number of battles. And after the fourth battle, the department surrendered. And Dr. Rodriguez then sought war reparations. They did not extend just to the battle that the department says that they lost. It extended to everything that led to this entire controversy stemming from the department's initial prosecution. So I would say that, based on the precedent, based on the language in Art, based on the language in Citizens, and those considered the intent of the legislature, that a case extends beyond that. In Art, did the State challenge anything besides the amount of the fees? The State did not challenge anything beyond, well, they did challenge the invalidation in a prior case. And, actually, Art, depending on what you read, the appellate court in Art, there was actually an appellate court decision, then it came to this court, and then it eventually went back to the appellate court again after the plaintiff sought fees in the Circa court. And, according to the second appellate court decision in Art, the Supreme Court, this court, was the one that invalidated at least one rule. And, according to the appellate court in the first Art case, they invalidated a rule. So there was a lot of controversy regarding whether or not the rule was invalidated. It then went to the Court of Claims, and the Court of Claims, in a published opinion, stated, we find no statute of limitations pertaining to 1055C, but we determine that we do not have jurisdiction to hear this claim. But, certainly, there must be somebody who has jurisdiction to hear this claim. And they essentially directed the parties to find a court that had jurisdiction to entertain the claim. And the parties went back to the circuit court and brought it in the circuit court. I would mention, in addition, that a court is not a judge. A court may be made up of many judges, but it's not a single judge. And the case law establishes that as well. So, you know, if one had to always keep the same judge when one brought a case, there would be great problems, because I can tell you that just in bringing Rodriguez 3, Judge Taylor was our third judge on the case, because Judge Gardner retired, and then Judge White took over the case. And then we had Judge Taylor, and it's my understanding now that Judge Taylor is transferred to another section. The department claimed in the brief that had we brought it within 30 days before Judge Donnersberger, he certainly would have heard it. We disagree with that. Judge Donnersberger, once he reversed his decision and undid his vacator of the rule, it went up on appeal. While it was up on appeal, he retired. He certainly was not going to grant us fees or entertain a motion for fees if he had undone his vacator of the rule. So by the time we came back down, Judge Donnersberger was no longer on the bench. Are there any other examples of a situation where a case has no statute of limitations? Well, I don't know that it doesn't have a statute of limitations if it's construed to be an independent cause of action. There is a statute of limitations that pertains to contracts and also other civil actions not otherwise provided for. And it's a five-year statute of limitations. And in the past, this Court and the appellate courts have on many cases applied that five-year statute of limitations to causes of action where the legislature has not placed a specific limit within a statute. If this Court were to hold that that particular statute of limitations applied here, we would clearly have met it. And in addition, I would expect that during the 17 months that the rule vacator had been reversed by Judge Donnersberger until the appellate court reversed it, those 17 months, the statute of limitations would have been told. And in any case, the Department never raised the statute of limitations at the level of the trial court so that they would have waived that. So, yes, there may well be a statute of limitations of five years if this Court were to hold that the statute of limitations that applies to civil actions not otherwise provided for applies to 1055C. Counsel, you rely quite heavily on the description of 1055C in Citizens. Wasn't the Court there simply emphasizing that you get the fee in any case in which a rule is invalidated for any reason? Was the Court really talking about filing new causes of action unencumbered? Well, I guess now you're backtracking a little bit on your any time limit in response to the question of the statute of limitations. But were they really talking about separate claims? I'm not sure that they addressed that. But the Court did make clear that it was clear and unambiguous. And the only restriction on a person's ability to seek attorney's fees was that the person had a rule invalidation in his or her hand that they had invalidated a rule. So, no, it did not address that issue specifically, but it made clear that the statute was unambiguous and clear and that this Court could not foresee any statute that had fewer restrictions than 1055C. I think it's clear that 1055C creates a right. I know counsel for the Department has argued that it's merely a remedy. We don't hold that view. If it's only a remedy, then where does the right to fees come from? It certainly can't come from the Declaratory Judgment Act because, as this Court held in Barringer v. Page, the Declaratory Judgment Act is strictly remedial and confers no substantive rights. So it's not coming from there. If this were an ALR proceeding, there's no right to fees there. And I suppose if there had been, then everyone in an ALR proceeding or with a declaratory judgment would be seeking fees. But they don't because it's not there. So it is a cause of action. May I stop you there? Sure. Take you away from your military definitions and bring you back to a recurring issue here. Okay. And that is what do we mean by a claim? And I raise that in the sense of the res judicata argument. Your opponents brought up a discussion about 304A, and we've certainly seen a series of cases, whether in the 137 sanctions idea, but also in other cases about contract fee shifting or statutory fee shifting. We look at those cases, the actual fee petition, as being a separate claim. And there's lots of cases about a final order then suddenly becoming a non-final order because it's another claim and do we need 304A language and all those kind of things. So the cases that we've seen, my experience of seeing fee petitions, come usually in that context of there's the issue, the specific issue, it's resolved, and then there's the fee petition that now makes the first judgment not final anymore and so we have this 304A piece out there. And that, of course, leads to the res judicata argument. So I want to bring you back and ask you to be more precise about your definition of what this is. You've used the word cause of action. You've used the word claim. You've used the word case. What is this? Is this a claim? 1055C. Is this a claim? It is a cause of action. Is it a claim? And what's the difference? Well, I think there's a lot of controversy over what the difference is because some people will equate a claim with a cause of action. This court has defined a cause of action as basically a right to sue in Walters v. City of Ottawa. A claim has been defined in Marsh as essentially any matter, in fact, as broadly as any matter. That was one of the definitions in Marsh of a claim. So if it's a cause of action, using your language, then wouldn't it not be similar to other cases where we say that all causes of action or we usually say all claims must be brought before there's a final judgment? So in other words, a res judicata effect. Well, I think there's a difference here because the claim did not accrue until after the rule was invalidated. And if one, for example, looks at Lawler, which is a United States Supreme Court decision, it held that you can't have, under no circumstances, can you have a judgment which precludes claims that follow after it. And the appellate court cited to Bank of Lions. We cited several other cases, Murnay. And the concept there being the claim did not exist at the time of the underlying proceeding. It only came into effect afterward. At the time of the appellate court opinion. I'm sorry? At the time of the appellate court opinion. I'm sorry. I'm asking you when you think that the claim accrued. In this particular case, well, I think it accrued twice. I think it, well, it's an unusual case. I think it, I think it accrued, I think it accrued when Judge Donner, after Judge Donnersberger entered his order. And then it unaccrued when Judge Donnersberger reversed himself and vacated the opinion. Because 2-1401 is a distinct cause of action. This court has held. And then it accrued again after the appellate court in Rodriguez II reversed and held that it was invalid. So it actually, in our view, it was invalidated twice with a period of time of about 17 months when it was quote unquote invalid. Even though it was really always invalid because there was a conflict between the rule and the enabling statute. It just hadn't been held invalid during that 17 months. I think if one looks at the case law, and people versus Herlinda recognize this, that generally claims for fees are collateral. And there have only been really two situations where there's not true. One is Rule 137C where the rule dictates that it has to be brought as part of the underlying proceeding or within 30 days. And then you have contract cases such as Gaspera or Herlihy, which held that because the claim accrued during, had accrued at the time of the underlying proceeding, that it had to be brought then. But if you have a claim that accrues after judgment or as a result of judgment in the underlying proceeding, such as in Bank of Lyons. Then maybe we have to talk about when is the judgment? When the appellate court rules? Well, in this case, there were two judgments. So it would be, well, it's a strange case. You know, from my viewpoint, there were two final decisions in the case, when Judge Donnersberger ruled and then when the appellate court ruled. Because, again, the law has held that a 2-1401 is a separate and distinct clause of deduction. So once the 2-1401 unvacated Judge Donnersberger's original ruling, then it wasn't quote, unquote, invalid anymore. And then it had to wait for the appellate court to reverse and hold that it was invalid. Was there anything to preclude bringing the attorney's fees in Rodriguez I somewhere along the line? In Rodriguez I, attorney's fees was not an issue in Rodriguez I. It only became an issue in Rodriguez II. Rodriguez I was Dr. Rodriguez sought to obtain deposition subpoenas. In Rodriguez II, that's where he brought the declaratory act alleging the conflict between the rule and the enabling statute. Was there any opportunity in Rodriguez II prior to the separate claim being filed to bring the attorneys? Not during the underlying action, because it was unright. It was speculative at that point. And this Court has held many, many times that one cannot bring a deck action for something that's speculative. I think Behringer holds that. Messenger holds that. We've cited a number of appellate court cases. You can't seek something based on something happening that hasn't happened yet. Upon the invalidation, was there any remand to the circuit court? Are you talking about the invalidation before the appellate court? Yes. No, there was not. But there didn't have to be, because it was collateral. It was collateral because it arose after the rule. There's a whole line of cases, Herlihy, Libertyville, Physicians Insurance Trust, that holds that if a matter is collateral, in other words, arising after the judgment, or I'm sorry, they define it, a collateral matter is one arising after the judgment. And this Court in Pappas, as well as Illinois State Toll, and both of those cases relied specifically on Libertyville, held that the Court retains jurisdiction indefinitely to entertain collateral matters. Well, this is for Mr. Helitz as well when he gets up here. Is that your response to why res judicata doesn't apply? Because it's not only what could have been decided, or not only what was decided, but what could have been decided in a prior suit, right? Well, it couldn't have been decided in the prior suit because the prior suit was over. When the prior suit ended is when the claim came into existence. So it couldn't have been decided. In addition, under the Declaratory Judgment Act, there's an exception there that's well established to res judicata as being a statutory scheme under this Court's holding in Hudson, under where it adopted Section 26, I think it was 1D, which basically said when there's a statutory scheme that provides that res judicata not apply, it not apply. But our first argument is that res judicata doesn't apply because it could not have been brought at the time of the underlying action. It hadn't accrued yet. And, you know, I'll be honest, we cited about six or seven cases for that, including Bank of Lyons and Chicago smelting. And we cited Murnay, which is this Court's opinion, I believe, from 1998 or 1999. There were many others. Deke is an older Illinois Supreme Court case. Underwriters is an older Supreme Court case. And they've all held, as did the U.S. Supreme Court, that where the claim has not accrued at ñ where the claim does not accrue until judgment in the underlying action or after that, it couldn't have been brought. So the only way to bring this would be in a Deke action? The only way to bring ñ I'm sorry. This clause of action? No. Well, this clause of action, no. It could be brought as an independent clause of action. It could be brought as further relief under the Declaratory Judgment Act. We did both. It can be brought as being collateral to the underlying action under Libertyville, Hurley, Physicians Insurance. There are about eight, nine, ten appellate court cases that have held that where the claim arises, either outside of the issues on appeal or after the underlying judgment, that it's ñ that it is collateral. And as this Court held in Illinois State, Toll, and Pampas, the Court retains jurisdiction to hear those. So the ratio would not apply. Your time has expired. Thank you, Your Honors. Your Honors, first off, the Department did not declare war on Dr. Rodriguez. The Department received a complaint from a citizen that required the Department to investigate and eventually decided to file administrative charges. What happened after that was the Department was sued twice in the Circuit Court. We never really got to a point where the Department was litigating because after we had litigated for years in the Circuit Court on the deck action, eventually the Department decided it was going to just give up and issued a letter to Dr. Rodriguez saying that his conduct had not violated the statute. But the suggestion that the Department has declared war explains part of the problem here. What's really happened is that the Department began an administrative proceeding. We've had many, many cases now involving this issue. My opponent's suggestion is that all the fees for all of that litigation that they initiated should be shifted onto the state and that that is what the General Assembly intended with this language. That would be a very odd intention from the General Assembly in a statute like this that essentially gives up the state's sovereign immunity where we would actually write a check to someone. Your Honors understand that that doesn't happen much. This is 1055C. It's buried in the Administrative Procedure Act. There is no statute of limitations. There is no provision in the statute for venue or how you bring these claims. That's because this wasn't intended by the General Assembly to be a cause of action. It was intended to be a claim. And it was intended to be a claim that was part of the case, whatever case it was. Judge Donnersberger would have ruled on this claim for fees had they brought it because as Justice Tice pointed out in her questions about Rule 304A, the case wouldn't have been final and Judge Donnersberger would have known that and he would have had to take a fee petition and then we would know how much they want to charge per hour and how many hours they had put in. All of that would have been presented to him. None of it was. Those 30 days passed. It's my contention that the case end it. What happened subsequently were different cases. This is a different case. And it's the language of the statute that should control the outcome of this case. My opponent really spent no time talking about that. But the language, the court, the litigation expenses, the action, all goes to an understanding of the case that's before the court that the General Assembly was thinking about. I think it was probably an administrative review action, Your Honor, that they had in mind. That's the way these cases typically come out of the agency up into the courts in the circuit court on a petition for administrative review. DEC actions are different. They're more common. Yes, the statute applies to DEC actions too, but not in this way. Citizens Organizing Project and ARNT both talked about the broad reach of the fees, how much you can claim, but never said anything at all about whether that could be brought as a separate claim. There's nothing in ARNT and there's nothing in Citizens Organizing Projects that suggests that anybody can file a new case in the circuit court seeking fees. It's an unusual procedure, and I don't know of any of the statutes that are discussed in ARNT, for example, that allow it. It's not something in my experience, quite frankly, that we see new claims, stand-alone claims. I would like my fees for that case that was decided years ago. It is new that they bring up the statute of limitations that they hadn't argued before. They had said throughout their briefing in the circuit court too and to the trial court and to the appellate court that the cause of action was unbounded, that they could bring it whenever. That makes no sense. The argument that they have five years makes more sense, but again, there's nothing here to suggest that the General Assembly had a cause of action in mind when they enacted this law. My understanding of procedurally how this works is simple and straightforward. I think it's the procedure that most of the bar understands and the courts have understood the cases back that up. They've got a strange view that there's been two declarations here of the statute being invalid. I don't think there's any support for that. Judge Donnersberger declared the, I'm sorry, I said statute. Judge Donnersberger declared the administrative rule invalid, not the appellate court in the Rule 23 order that it issued. It wouldn't have been a Rule 23 order if the appeals court had declared an administrative rule invalid. You can imagine they would certainly have published that to let us know. I think their argument is just too complicated, too clever and wrong. This is a very straightforward, simple statute, and I'd ask the court to interpret it that way. If there are no further questions, I ask that the appeals court judgment be reversed and that the judgment of the circuit court be reinstated. Thank you very much. Thank you. Case number 113706, Jack B. Rodriguez, I believe, versus the Department of Financial and Professional Regulation appellant. It's taken under advisement as agenda number 20. Thank you for your arguments today.